## Case No. 3,530.

### The CYPRESS.

[1 Blatchf. & H. 83.][1]

District Court, S. D. New York. Oct., 1829.

LIBELS FOR SEAMEN'S WAGES — COMPETENCY OF WITNESSES — PAROL EVIDENCE TO CONTRADICT SHIPPING ARTICLES—TIME FOR FILING SUITS.

1. Seamen are competent witnesses for each other in suits for wages earned on the same voyage.

2. By the act of congress of July 20, 1790, § 6 (1 Stat. 133), a seaman is restricted from bringing an action for wages against a vessel, in her port of delivery, until ten days after her cargo is discharged, unless she is about to proceed to sea before the expiration of the ten days.

3. Whether the seaman must wait ten days in case of an absolute discharge by the master, quere.

4. Parol evidence on the part of a seaman is admissible to vary or contradict the written contract contained in the shipping articles.

[Limited in Slocum v. Swift, Case No. 12,954. Cited in The Elvine, 19 Fed. 528.]

5. A stipulation in the articles that the seamen shall not in any case demand their wages until the expiration of a certain time, is void, in case the service is completed or the seamen are discharged before the expiration of that time.

6. As soon as a seaman's connection with a vessel is legally dissolved, his right to resort to her eo instanti for his wages is consummated.

[Cited in The Cabot, Case No. 2,277.]

7. Semble, that an agreement in shipping articles that the seamen shall not sue for their wages till three months after their services are ended, will be held void as against the seamen.

[Cited in McCarty v. The City of New Bedford, 4 Fed. 829.]

This was a libel in rem to recover seamen's wages. The libellants shipped in Maine, on the 8th of October, 1828, on a trading voyage for nine months, as they alleged. The vessel entered the port of New-York from Europe in September, 1829, and discharged her cargo. The libellants alleged that she was about to proceed to sea again forthwith, and that they were discharged by the master, their wages remaining unpaid. The master answered, denying that wages were due, and also alleging that the libellants left the ship without his consent, and before their term of service had expired. The proofs on the part of the claimants were the shipping articles, and three depositions taken in the state of Maine, one of the person who filled up the shipping articles and saw two of the libellants subscribe them, and the other two of sailors who shipped at the same time. The evidence for the libellants was the deposition of each libellant for the others. Objections to the admissibility of the proofs were taken on both sides. The remaining facts necessary to the understanding of the case are set forth in the opinion of the court.

Edwin Burr, for libellants.

Alexander H. Dana, for claimants.

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

BETTS, District Judge. The claimants insist that the libellants are incompetent witnesses for each other, as their rights rest upon precisely the same ground, and the testimony which supports the recovery of one will equally enure to the benefit of all. This position is not, however, accurate in point of fact. The libellants have no joint interest in the matter in suit, nor any concurrence of purpose, further than that their testimony tends to establish a right of action. Each recovers independently of the others, and any matter in abatement or bar of the action of one will in no way affect the rights or remedies of his associates. They do not unite in the action because of any common interest between them, but because, the ship being the fund which is to discharge the wages, the action is made common to all, in accordance with the maritime law and the express provision of the statute, which would compel the suits to be consolidated if brought separately.

In most cases, seamen cannot be witnesses for each other in a suit in which all are involved, the rules of pleading and evidence being then applied to them as to other parties. But they are admitted to testify for each other in relation to their claims for wages earned on the same voyage, because they are only united on the record, whilst their interests in the recovery and their liabilities to costs are wholly distinct. The evidence is certainly not omni exceptione major, still it is not prohibited, and the court, in applying it to the determination of the cause, exercises a legal discretion as to its effect. This will suffice to show why such evidence should be admitted; but it is not necessary to decide whether it is of itself sufficient in this case to sustain the libel, for there is other evidence tending to support the demand of the libellants

The claimants next urge that the action is premature, the libel having been filed the day after the cargo was discharged, and before the expiration of the ten days limited by the act of congress of July 20, 1790 (1 Stat. 133). It will be seen, however, that the same section of the act which withholds from a seaman the right to proceed for his wages until ten days have elapsed after the cargo is fully discharged at the last port of delivery, saves to him the right to an immediate action in case the vessel is about to proceed to sea before the expiration of the ten days; thus leaving him, in that case, the same right he would have under the general maritime law independent of the provisions of the act. The libel alleges, and the answer does not deny, that the vessel was about to proceed to sea forthwith. Admiralty process was, therefore, rightfully taken out, if the wages were due at the time.

I am, moreover, inclined to think, upon the evidence, that the master discharged the libellants, and it is very questionable whether a delay of ten days can be exacted, where a

seaman is absolutely discharged from the vessel. That terminates the contract, and takes away his claim for a continuance of wages, and it would seem but a just reciprocity to hold that the ship's term of credit is expired, when, by the act of the master, the seamen can longer charge her with wages.

The claimants urge further, that the period of service stipulated in the shipping articles, which they produce in court, was twelve months, instead of nine, as alleged by the libellants, and that it was also agreed that the wages should not be demandable previous to the expiration of the twelve months. This action was instituted a little more than eleven months after the voyage began. Outside of the articles, the evidence is very satisfactory, that the libellants shipped with the understanding that their engagement was for nine months only. If this fact rested upon the testimony of the libellants alone, that, though admissible, would be received with great distrust, since the men mutually establish each other's right of action, by swearing to the fact as applicable to the crew, without swearing to the act of each libellant by itself. But they are fully corroborated in the fact by the deposition of two seamen who were examined on the part of the claimants. All agree, that when they shipped and signed the articles, they engaged for only nine months; and Long, a witness who has no interest in this point, heard it so asserted on the voyage, in presence of the master, who did not contradict it.

The articles specify the term as twelve months, and that the wages shall not be demandable until the expiration of that time. But, according to the principles which prevail in admiralty courts, there is no difficulty in inquiring into the true terms of the contract, notwithstanding the written agreement. The act of July 20th, 1790, which enjoins upon the master to make his agreement with the seamen in writing, does not make the written agreement conclusive upon the seamen, neither do the courts regard it as such, whatever effect it may have as to the master. Seamen have, in numerous cases, been permitted to prove that the shipping articles did not set forth correctly the agreement entered into by them; and the court, without impeaching proofs, will hold to be void such agreements in the articles as are injurious to the seamen. The Juliana, 2 Dod. 504; The Minerva, 1 Hagg. Adm. 347; Harden v. Gordon [Case No. 6,047]; Abb. Shipp. (Ed. 1830) 435.

In endeavoring to ascertain the true nature of the agreement made in this case, it is to be noticed that the articles themselves are calculated, on their face, to excite suspicion as to this particular stipulation. The body is in a common printed form, and manifestly the parts in writing have been, in some places, gone over a second time with a darker ink, so as to leave it difficult to say wheth-

er the words, as originally written, have been preserved, or whether new ones have been substituted. This indistinctness is particularly noticeable in the word twelve, before months, fixing the time of service. This circumstance alone would create so much doubt as to the integrity of the written agreement, that it ought not, unexplained, to outweigh the positive testimony of the libellants to the fact, even if they were not sustained by the two seamen produced on the part of the claimants, both of whom understood the agreement to be for nine months only.

The claimants offer the deposition of a witness resident in Maine, who swears that he filled up the blanks in the articles, and first used a pale ink, and afterwards a darker ink, and that he well recollects that the stipulation that the libellants should not demand their wages until the end of twelve months was inserted before they signed the articles. It is observable that this witness does not swear that the articles, as signed by the seamen, stipulated for a service of twelve months. The fact that he swears so precisely as to the twelve which limits the time for bringing the action, which is of the least importance, while he wholly omits any reference to the doubtful twelve which fixes the time of service, together with the appearance of the writing, is, independent of the other proofs, very impressive evidence that the blank was originally filled with the word nine. When and by what authority the word twelve was substituted, is not explained. It may be added, that the signatures of the libellants and of the witnesses are all in pale ink, and it would be singular if, after having written over the body of the contract in dark ink, because of the indistinctness of that first used, the parties should yet, at the moment of signing, have abandoned the dark ink, and have returned to the use of the pale. I am satisfied that the contract was written and signed with the pale ink, and that subsequently parts were written over with the dark ink, it may be, without the variation of a word. But, the transaction not being explained, the party setting up the contract must bear the consequences of the presumption of its having been altered after its execution without the consent of the other contracting party. This deposition is moreover, not certified in conformity to the requirements of the 30th section of the act of congress of September 24, 1789 (1 Stat. 88, 89); Bell v. Morrison, 1 Pet. [26 U. S.] 351); and, though it has not been formally excepted to by the libellants for that cause, I should have felt constrained to exclude it for informality, had its evidence not stood contradicted and impeached by the evidence against the articles.

The defence that the libellants have deprived themselves of a right of action until the termination of the twelve months' credit stipulated, could not, even if proved, avail the claimants. An engagement written in

shipping articles by a master, and subscribed by seamen, not to sue for their wages when due, and every other restriction of their legal rights, will be treated by maritime courts as an imposition practised upon ignorant and improvident men, and, because of its manifest injustice, will not be enforced against them. It will be adjudged to be nugatory and void. So, also, the discharge of a seaman from a vessel by her master during the running of the shipping articles, will be held to be a surrender or release, in toto, of their obligation upon the man, because every duty imposed on him by the contract arises from and is dependent upon, his legal connection with the vessel. When that is severed, his pay ceases; and the separation would also, almost universally, take from him, at any after period, the benefit secured to him by law for the recovery of his wages—that of a summary arrest of the vessel. The courts are watchful in protecting him from vexatious delays and embarrassments in establishing his right to his hard earnings when withheld from him, and will see to it that he is not entangled and defeated in that, by sharp bargains imposed upon him by masters or ship-brokers. If, then, the agreement in the present case, not to sue for their wages until three months after their services should be ended, was genuine on the part of the libellants, the court would be compelled to reject it as a defence, and to regard it as having been obtained by imposition and deceit. On general principles, every engagement introduced into shipping articles outside of their appropriate end and purpose, should be held void as to the sailors, unless it is satisfactorily proved to have been clearly made known to them, and rests on considerations approved by the court.

I think that in this case this action is well brought, and that the libellants are entitled to recover the wages demanded. A decree will accordingly be entered in their favor to that effect, with an order of reference to the clerk to compute and report the amount, making allowance to the claimants for all just credits.

Decree for libellants, with costs.